```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION
```

ROBERT D. WHISENANT,            }
                                 }
    Plaintiff,                   }
                                 }      CIVIL ACTION NO.
v.                               }      2:13-CV-1730-WMA
                                 }
CSX TRANSPORTATION, INC., et     }
al,                              }
                                 }
    Defendants.                  }

**MEMORANDUM OPINION**

The complaint filed by plaintiff Robert D. Whisenant contains a claim of retaliation under Title VII against defendant CSX Transportation, Inc ("CSX") and two claims against defendant Camille Lockhart under Alabama state law for tortious interference and defamation. (Doc. 1 at 4-5).  Before the court are motions for summary judgment[1] respectively filed by CSX (Doc.

---

[1] Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where there is a dispute, the facts are presented in the light most favorable to the non-moving party.  "The movant 'bears the initial responsibility of informing the district court of the basis of its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Thereafter, the burden shifts to the non-movant to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also *Celotex*, 477 U.S. 317, 324.  Conclusory allegations or legal conclusions are not enough. See *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

1

31) and Lockhart (Doc. 33).  For the reasons stated below, both defendants' motions for summary judgment will be granted.

## I. Retaliation

Under Title VII, a prima facie case for retaliation requires a plaintiff to show that "(1) [he] participated in a statutorily protected activity; (2) [he] suffered a materially adverse employment action; and (3) there is a causal connection between the two." *Evans v. Books-A-Million* 762 F.3d 1288, 1298 (11th Cir. 2014).  "Even if an employment practice is not as a matter of fact unlawful, a plaintiff can establish a prima facie case of Title VII retaliation if he shows that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 857 (11th Cir. 2010).

However, it is "the bedrock principle [of Title VII] that not all objectionable conduct or language amounts to discrimination under Title VII . . . general vulgarity or references to sex that are indiscriminate in nature will not, standing alone, generally be actionable.  Title VII is not a 'general civility code.'" *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  "[I]n order to be actionable under the [Title VII] statute, a sexually objectionable environment must be both objectively and

subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. "Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* at 787-88 (quotation marks omitted).

In this case, Whisenant alleges that CSX retaliated against him for complaining to a supervisor about a single off-color joke[2] he overheard another of his supervisors tell at a meeting in an adjacent room. (Doc. 32-14 at 34-35). While Whisenant may have personally thought his supervisor's joke to be offensive (Doc. 32-14 at 34), "no reasonable person could have believed that the single incident . . . violated Title VII's standard." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001). Whisenant himself admits that "you can expect men to tell that joke in front of men," finding the incident offensive merely "[i]n the context of a woman telling that joke in front of about seven, eight, nine men." (Doc. 32-14 at 34). Whisenant further admits that the "joke by [his supervisor] is the only comment that [he is] referring to that [he] thought was offensive." (Doc. 32-14 at 35). Title VII protection does not extend to the mere

---

[2] Whisenant alleges the joke in question is "Who was the most popular man at a nudist camp? . . . it's the man that can go get two cups of coffee and 13 doughnuts." (Doc. 32-14 at 33).

"simple teasing, offhand comments, and isolated incidents" common in certain work environments. *Breeden*, 532 U.S. at 271.  When construed in the light most favorable to Whisenant, at best, this single off-color joke constituted no more than an uncomfortable workplace occurrence well short of the kind of sexual harassment Title VII protects from retaliation after being complained of.  Therefore, summary judgment in favor of CSX is appropriate because Whisenant fails to raise sufficiently a protected activity under Title VII.

## II. Tortious interference

The court could dismiss without prejudice the claims brought under Alabama tort law for lack of subject matter jurisdiction because of the disappearance of the federal question as to which they are appended.  But, because of statute of limitations concerns and judicial economy, the court chooses to continue its exercise of supplemental jurisdiction.

Under Alabama law, the tort of intentional interference with a contractual or business relationship requires "(1) the existence of a protectible business relationship; (2) of which the defendant knew; **(3) to which the defendant was a stranger;** (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009) (emphasis added).  Under Alabama's "stranger" requirement:

> One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from **interwoven contractual arrangements** that include the contract. In such an instance, the participant is not a stranger to the business relationship and the interwoven contractual arrangements define the participant's rights and duties with respect to the other individuals or entities in the relationship. If a participant has a legitimate economic interest in and a legitimate relationship to the contract, then the participant enjoys a privilege of becoming involved without being accused of interfering with the contract.

*Walter Energy, Inc. v. Audley Capital Advisors LLP*, 2015 WL 731152, at *6 (Ala. Feb. 20, 2015) (quoting *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1157 (Ala. 2003)).

Generally speaking, an independent contractor's relationship with the party for whom it performs work, is independent from that entity's relationships with its employees, *Latham v. Precision Strip, Inc.*, 2013 WL 6196105, at *4 (N.D. Ala. Nov. 27, 2013). In this case Lockhart's particular contractual arrangement with CSX established certain rights and duties vis-a-vis Lockhart and CSX employees. In her contract with CSX, Lockhart agreed in pertinent part:

> . . . to periodically meet with CSX Transportation Inc. Management personnel to discuss any issues concerning cleaning responsibilities and safety matters . . . [and] to route concerns, observations and or comments to the management of CSX Transportation Inc. (Doc. 34-2 at 2).

Lockhart additionally agreed "to cooperate with CSX [] employees to accommodate the property in providing cleaning services at such other time as any is requested from time to time." (Doc. 34-

5

2 at 2).  Consistent with these contractual rights and duties, Lockhart discussed with CSX the issues and concerns involving Whisenant that her staff had raised with her. (Doc. 34-1 at 3-19; Doc. 34-3 at 1-2; Doc. 37-5 at 1-2).  Therefore, even though Lockhart was not a party to Whisenant's employment relationship with CSX, Lockhart is not a stranger to the relationship given the interwoven contractual arrangements between her, CSX, and CSX employees.  Lockhart's contract with CSX defined her rights and duties not only with respect to CSX but other entities in the relationship, including CSX employees.  Within the domain of performing her company's cleaning duties at CSX, Lockhart enjoyed the privilege of becoming involved with CSX and its employees without being subject to a legally cognizable claim of interfering with the contracts of CSX employees.  Therefore, on Whisenant's claim for tortious interference, summary judgment in favor of Lockhart is appropriate because Lockhart is not a stranger to the contract.

**III.    Defamation**

In Alabama, "[t]o establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent, . . . [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff . . . , [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations

and proof of special harm (actionable per quod)." *Gary v. Crouch*, 867 So. 2d 310, 315 (Ala. 2003). "Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party . . . the communication is privileged." *Ex parte Blue Cross & Blue Shield of Alabama*, 773 So. 2d 475, 478-79 (Ala. 2000) (quoting *Berry v. City of New York Ins. Co.*, 98 So. 290, 292 (1923)). "The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is . . . moral in its nature." *Id*.

Here, Lockart's communication with CSX about Whisenant is privileged because it was made pursuant to her contractual obligations as an independent contractor of CSX. Under the contract, Lockhart agreed to "route concerns, observations and or comments to the management of CSX." (Doc. 34-2 at 2). In accord with this contractual duty, Lockhart communicated to CSX her own workers' concerns and observations about Whisenant. (Doc. 34-1 at 8-12).

Alternatively, Whisenant asserts that Lockhart exceeded the scope of the privilege by including alleged specific vulgar statements about his supervisor being a "bitch" and "fucking her way to the top," which were not included in the written statement provided by Lockhart's employee, Pamela Rice. (Doc. 36 at 30; Doc. 37-2 at 2-5). Whisenant's argument overlooks the fact that

in addition to relying on, and later transmitting to CSX, Rice's written statement, Lockhart's communication to CSX about Whisenant was also largely based on Lockhart's in person meeting with her employees (which included Rice). (Doc. 34-1 at 8-12; Doc. 39 at 2-3). Whisenant does not dispute the fact that such a meeting occurred or that Lockhart's employees told her about the specific vulgar statements in question, but instead Whisenant offers a theory of mistaken identity where the "Robert" that Lockhart and her employees reported to CSX was not Whisenant, but another "Robert." (Doc. 32-14 at 25-26). Even if Whisenant's mistaken identity theory could be proven, it would not put Lockhart's communication to CSX outside the scope of the privilege. Consistent with her contractual duty to CSX, Lockhart communicated to CSX specific concerns about a "Robert," communication that fully enjoys privilege from liability for defamation. (Doc. 34-3 at 1-2). Therefore, on Whisenant's claim for defamation, summary judgment in favor of Lockhart is appropriate because her communication to CSX was privileged.

## CONCLUSION

For the reasons detailed above, the court will by separate order **grant** defendants' motions for summary judgment as to all claims.

DONE this 11th day of March, 2015.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE